VICTOR LALLI ENTERPRISES, INC., by Change of Name to Val Publishing Company, Inc., Plaintiff,

v.

SKIPPY CANDLE CORPORATION, David Adler, Joe Fabian, and Ted Becker, Defendants.

No. 82 Civ. 0051 (JES).

United States District Court, S.D. New York.

Feb. 7, 1984.

McAulay, Fields, Fisher, Goldstein & Nissen, New York City, for plaintiff; Julius Fisher, New York City, of counsel.

Jules D. Zalon, South Orange, N.J., for Becker; David O'Driscoll, South Orange, N.J., of counsel.

## OPINION & ORDER

SPRIZZO, District Judge:

Plaintiff, Victor Lalli Enterprises, Inc. ("Lalli") commenced this action for trademark infringement against defendants Skippy Candle Corporation ("Skippy"), David Adler, Joseph Fabian, and Theodore Becker pursuant to section 32 of the Lanham Act, 15 U.S.C. § 1114 (1982). Fabian failed to answer, and a default judgment has been entered against him. Skippy and Adler entered into a settlement agreement with plaintiff, and the action has been discontinued as to them. The remaining defendant, Becker, and plaintiff have entered into a consent judgment which resolves their dispute in all respects except one.[1]

The issue that remains is whether plaintiff is entitled to recover attorney's fees from Becker pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117.[2]

Lalli argues that this is an "exceptional case" within the meaning of section 35 and that an award of attorney's fees is therefore appropriate. Becker claims that the parties agreed to settle the case in July 1982 with each party to bear its own costs and attorney's fees; he therefore argues that plaintiff is improperly trying to circumvent the terms of that settlement by now seeking to recover fees. Becker further argues that this case is not, in any event, an "exceptional case" which would warrant an award of fees.

## FACTS

Plaintiff is a New York corporation which owns the registered trademark "Black Cat" for numerology leaflets which are published periodically. U.S. Patent Office Certificate of Trademark Registration No. 880,945. The complaint alleges that Skippy used the words "Black Cat" to identify a numerology publication which it advertised, sold, and distributed in interstate commerce. Complaint para. 15. It further alleges that defendants Fabian and Becker sold and distributed the infringing Skippy "Black Cat" publication in interstate commerce with full knowledge of plaintiff's ownership of the mark. *Id.* paras. 20, 21.

The complaint was filed on January 5, 1982.[3] Counsel for plaintiff represented to the Court as early as June 15, 1982 that settlement negotiations were being held with Becker's attorney. Letter to the Court from Julius Fisher, Esq. dated June 15, 1982. At a pre-trial conference on July

---

1. The consent judgment between plaintiff and Becker dismisses the action as to those parties and awards no damages. In essence, it permanently enjoins Becker and his agents from publishing or distributing publications which infringe or cause confusion with plaintiff's "Black Cat" trademark. Pursuant to its terms, Becker also agreed to deliver his inventory of the allegedly infringing publications to plaintiff and to remove any reference to them from his advertisements and promotional materials.

2. Section 35 states in pertinent part, "The court in exceptional cases may award attorney fees to the prevailing party." 15 U.S.C. § 1117.

3. Becker ceased sale of the allegedly infringing publication immediately upon being served with the complaint.

19, 1982, the attorneys for both sides orally agreed, in open court, to settle this action without damages to either party and without attorney's fees. Thereafter, plaintiff's attorney prepared a proposed consent decree which embodied the terms of that agreement and transmitted it to Becker's attorney for signature by him and his client. Affirmation of David O'Driscoll, Esq. in Opposition to Plaintiff's Motion for Attorney's Fees, Exh. A. Paragraph 4 provided, *inter alia,* that, "Each party shall pay its own costs and attorney fees." *Id.*

Plaintiff's principal, Victor Lalli, refused to sign the consent decree when it was presented to him on the ground that he had only agreed to forego his damages claim, not a claim for attorney's fees. At a pre-trial conference on May 13, 1983, counsel for the parties agreed to submit the issue of attorney's fees to the Court and settle the remainder of their dispute.

### DISCUSSION

■ Although plaintiff's motion papers indicate that the provision requiring each party to bear its own attorney's fees "was drafted by plaintiff's counsel in the mistaken belief that plaintiff ... agreed to the same," no affidavit has been submitted by plaintiff stating that the representations made by plaintiff's attorney in open court were unauthorized.[4] Moreover, there is no explanation set forth with respect to how and why plaintiff's attorney arrived at the "mistaken" belief that he was authorized to settle the matter on the terms represented to the Court. Mr. Becker was entitled to rely on the representations of plaintiff's attorney. The Court will therefore enforce the agreement which was reached in open court on July 19, 1982, especially since there are no extraordinary circumstances

set forth in plaintiff's papers which would justify a departure from the normal and rational conclusion that a principal is bound by the acts of an agent exercising either real or apparent authority. *See, e.g., British American & Eastern Co. v. Wirth Limited,* 592 F.2d 75, 80 (2d Cir.1979); *see generally* Restatement (Second) of Agency § 140 (1958).

In any event, the Court finds that this is not an "exceptional case" which would warrant an award of attorney's fees.[5] Plaintiff cites only two facts in support of its claim for attorney's fees. First, plaintiff alleges that Becker had previously distributed plaintiff's publications and therefore *knew* that he was infringing its trademark when he sold Skippy's publication. Affidavit of Julius Fisher, Esq. in Support of Plaintiff's Motion for Attorney's Fees para. 20. Second, plaintiff argues that Becker demonstrated the willfulness of his infringement by failing to respond to a letter from plaintiff's attorney which complained of Becker's distribution of a leaflet which allegedly infringed other trademarks of plaintiff[6] and which further stated that "[I]t is my clients' belief that you are distributing other numerology leaflets and/or dream books under names the same as or similar to the trademarks used by my clients .... Such conduct on your part, if in fact taking place, may subject you to further liability." *Id.,* Exh. 2.

■ The Court finds that plaintiff has utterly failed to establish that it is entitled to an award of attorney's fees under section 35. The fact that Becker had previously distributed plaintiff's "Black Cat" publication does not establish that he knew that his distribution of Skippy's publication in-

---

4. It is undisputed that, at the July 19, 1982 pre-trial conference, counsel for the parties agreed to settle with each side to bear its own attorney's fees.

5. The legislative history of section 35 defines "exceptional cases" as those in which "the acts of infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" Senate Report No. 93–1400, 93d Cong., 2d Sess.

(1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News 7132, 7133.

6. The letter, dated April 21, 1981, demanded that Becker stop distributing a numerology publication entitled "Ching" because plaintiff owned registered trademarks for numerology leaflets published under the names "Ching's Pick-Em Hits" and "Cheng Chou's Weekly Pick."

fringed that mark.[7] Furthermore, a fee award under section 35 is always a matter within the sound discretion of the Court, and plaintiff here has made no showing that defendant's conduct was malicious or fraudulent. *See Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,* 511 F.Supp. 486, 496 (S.D.N.Y.1981), *aff'd,* 687 F.2d 563 (2d Cir.1982); *Marshak v. Green,* 505 F.Supp. 1054, 1062 (S.D.N.Y.1981).

Plaintiff's argument that Becker demonstrated the willfulness of his infringement by failing to respond to the letter from plaintiff's attorney is likewise without merit. The letter never even mentioned plaintiff's "Black Cat" mark. It was clearly not sufficient to put Becker on notice of any possible infringement of that mark.

## CONCLUSION

Having considered the submissions of both parties with respect to plaintiff's motion for attorney's fees, the Court concludes that an award of fees is not warranted by the facts of this case. Plaintiff's motion is therefore denied.

It is SO ORDERED.

---

**7.** In addition, the title of Skippy's allegedly infringing publication was changed from "Black Cat" to "Big Cat," a circumstance which further weakens any inference that Becker knew that he was infringing plaintiff's mark by distributing it.