John E. PATTERSON, et al., Plaintiffs,

v.

NEWSPAPER AND MAIL DELIVERERS UNION OF NEW YORK AND VICINITY, et al., Defendants.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

NEWSPAPER AND MAIL DELIVERERS UNION OF NEW YORK AND VICINITY, et al., Defendants.

In the Matter of the Specific Application of Jack LAVACHE, Group IV Employee at The Daily News.

Nos. 73 Civ. 3058 (WCC), 73 Civ. 4278 (WCC). Claim No. 216.

United States District Court, S.D. New York.

June 21, 1990.

As Amended July 3, 1990.

Alter & Barbaro (Bernard Alter, of counsel), Brooklyn, N.Y., for appellant Jack Lavache.

Holtzmann, Wise & Shepard (Gerald T. Hathaway, of counsel), New York City, for New York News, Inc.

Thomas W. Gleason (Harvey S. Mars, of counsel), New York City, for Newspaper and Mail Deliverers' Union.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

On September 19, 1974, the Court issued an opinion and order approving the settlement of this case and incorporating the settlement agreement (the "Agreement") in a consent decree, familiarity with which is presumed. *See Patterson v. Newspaper & Mail Deliverers' Union*, 384 F.Supp. 585 (S.D.N.Y.1974), *aff'd*, 514 F.2d 767 (2d Cir. 1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). The Agreement implements an affirmative action program which modifies the hiring procedures for newspaper deliverers under the industry-wide collective bargaining agreement. In the claim now before the Court, Jack Lavache appeals a decision by Administrator William S. Ellis, Esq. (the "Administra-tor") arising under the Agreement. For the following reasons, I uphold the Administrator's determination.

## BACKGROUND

Lavache, a minority employee of The Daily News (the "News"), appeals from the determination of the Administrator issued in Claim 216 on November 22, 1988. The following procedural history is relevant to the disposition of this case on appeal. In the fall of 1986, a number of individuals were added to the Group III list of the News. A challenge to the News' action was brought before the Administrator by Penda Hair, an attorney for the NAACP Legal Defense and Educational Fund, Inc. ("LDF"), on behalf of the class of beneficiaries under the Agreement. On March 24, 1987, the Administrator held a conference concerning these additions to the Group III list.

On July 22, 1987, the Administrator issued his first decision in Claim 216, determining that the individuals had been hired without regard to the hiring ratio set forth in paragraph 15 of the Agreement[1] and directing the News to add eleven minority persons to its Group III list and to credit them with priority and shifts worked as though they had been added in October, 1986. The Administrator further directed that a minimum of six of these eleven persons be taken from the Group IV list of the News. The Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU") appealed, and this Court affirmed the decision in all respects on March 15, 1988.

In Claim 223, the Administrator, on April 7, 1988, approved the transfer of thirteen non-minority persons to the News' Group I list and ordered that they be matched by thirteen minority persons in accordance with paragraph 18(b) of the Agreement. The Court approved the determination in Claim 223 in an opinion and order dated June 29, 1989.

---

**1.** Paragraph 15 mandates the addition of three minority persons to the Group III list for every two non-minority persons added.

On May 16, 1988, the Adjustment Board, appointed pursuant to an agreement between the News and the NMDU, issued a decision adding persons to the Group III and Group I lists in compliance with the orders in Claims 216 and 223. The end result of this decision was that two "wild card"[2] minority persons were elevated to the Group III list and then the Group I list and Lavache, more senior than either of them, was raised from the Group IV list to the Group III list.

On May 26, 1988, the Administrator, by letters to the parties, objected to the portion of the Administrative Board decision which resulted in the two wild cards' addition to the Group I list and ordered the Adjustment Board to modify its decision. The NMDU filed a notice of intent to review the Administrator's letter. On July 11, 1988, the Administrator amended his May 26, 1988 letter and directed the Adjustment Board to move wild cards Conrad Ephram and Gilbert Rodriguez, Jr. from Group I to Group III and to place Lavache and another employee at the bottom of Group I.

By letter dated August 15, 1988, the law firm of Alter and Barbero notified the Administrator that it had been retained to represent Lavache in Claim 216. By letter dated August 19, 1988, the Administrator gave notice to the parties that a meeting would be held on September 12, 1988 to pursue settlement of Claim 216. In September 1988, the meeting was held and attended by the News, the NMDU, the LDF and others, including Lavache. At that meeting, a settlement was reached whereby four minority persons, including Lavache, and four non-minority persons would be elevated from Group III to Group I.

At a conference on October 20, 1988 concerning the settlement, attended by the News, the NMDU, the LDF and others, including Lavache, the Administrator questioned Lavache as to who had represented him at the September meeting. The Administrator did not notify the law firm of

Adler and Barbero of this meeting. In a determination dated November 22, 1988, in which the Administrator approved the September 1988 settlement and directed its implementation by the News, the Administrator found that Lavache had been represented by the LDF during the settlement. The Administrator further stated that Lavache could pursue the issue of his priority number through his new counsel.

On November 29, 1988, Alter and Barbero notified the Administrator that Lavache intended to seek review of the November 22, 1988 determination. On December 2, 1988, the Adjustment Board implemented the settlement and ordered the elevation of eight individuals, including Lavache, to the Group I list.

## DISCUSSION

### Standard of Review

In determining the appropriate standard of review of the Administrator's decision, this Court first turns to the Agreement itself. Although the Agreement does not specify the standard of review to be applied, paragraph 4 of the Agreement empowers the Administrator to take all actions he deems necessary to implement the provisions and to ensure the performance of the Order. It further provides that the Administrator shall hear and determine a wide variety of claims arising under the Agreement, which may then be brought before the Court for review. It is clear, therefore, that the Agreement provides the Administrator with wide-ranging and broad authority.

In *Foreman v. Wood, Wire & Metal Lathers Intl. Union Local No. 46*, 557 F.2d 988, 992 (2d Cir.1977), the Second Circuit Court noted that the scope of review of an independent administrator appointed to ensure compliance with a settlement decree was similar to that applied to an arbitrator's decision. The court, however, declined to decide whether the standard of review was in all respects the same. More recently in *United States v. International*

---

**2.** "Wild cards" are individuals who had not worked any shifts at the News prior to their placement on Group III, although they had worked as truck drivers for other companies.

*Bhd. of Teamsters,* 905 F.2d 610 (2d Cir. 1990), the Second Circuit Court reiterated that an administrator's decision is "entitled to great deference." With this in mind, the Court turns to the Administrator's decision.

*Effect of October Hearing on Settlement*

Lavache asserts that he hired the law firm of Alter and Barbero to represent him personally because he believed that the LDF would not adequately represent his interests. Lavache contends that because his testimony was taken at the October hearing without notice to his personal counsel, he is not bound by his representation that he agreed to the terms of the September 1988 settlement.[3] Lavache cites no authority for this proposition.

In his November 1988 determination, the Administrator concluded that Lavache was represented at the settlement conference by the LDF, with whom Lavache had consulted during the conference before accepting the terms of the settlement. At the October 20, 1988 hearing, the following exchange took place between the Administrator and Lavache:

Q. ... Part of the settlement being that eight people would be moved from group three to group one, four minorities and four nonminorities and that you would be one of the persons, one of the eight?
A. Yes.
Q. Do you recall that was—
A. Yes.
Q. —the agreement?
At that time Ms. Judith Reed and Mr. Ellis [LDF attorneys] were here. Were they acting as your attorneys at that time?
A. At the time, yes.
....
Q. You did authorize your attorneys to proceed, to go along with [the proposal]?
A. Right. But all the facts weren't given.

Q. You went along with it?
A. Yes, I went along with it.

■■■ A party seeking to show that his attorney of record lacked actual authority to settle his case has the burden to show that such authorization was not given. *See Gilbert v. United States,* 479 F.2d 1267, 1268 (2d Cir.1973); *Turner v. Burlington Northern R. Co.,* 771 F.2d 341, 345–46 (8th Cir.1985). In connection with the present motion, Lavache does not provide an affidavit that the LDF lacked authority to enter into the settlement on his behalf. *See Victor Lalli Enterprises, Inc. v. Skippy Candle Corp.,* 578 F.Supp. 1384 (S.D.N.Y.1984). At the October hearing, Lavache expressly acknowledged that the LDF was acting in his behalf in entering into the settlement. Lavache's internal misgivings or dissatisfaction with his placement on the Group I list after the fact do not alter this conclusion. The complaints concerning the settlement which were raised by Lavache at the October hearing involved the information provided to him by the LDF, not his lack of representation by the LDF. After questioning Lavache, however, the Administrator expressly found that Lavache was fully apprised of the ramifications of his decision to accept the settlement and that there had been no misrepresentation to him respecting the settlement terms. The Administrator further determined that Lavache, after agreeing, on the advice of counsel, to accept the proposal, changed his mind and attempted to reject it, on the advice of a different attorney. The Administrator did not abuse his discretion in making this determination.

A different result is not warranted by the fact that the Administrator did not notify Adler and Barbero about the October hearing. Claim 216 arose upon the initiative of LDF attorney Penda Hair. Lavache presents no evidence that the LDF

---

**3.** Lavache apparently believes that by invalidating his agreement to the settlement he will be able to negotiate for a lower priority number on the Group I list. Priority numbers are assigned by the Adjustment Board by shop tenure and employees with lower priority numbers, according to Lavache, receive more frequent work opportunities. However, if this Court was to find Lavache's agreement to the terms of the settlement invalid because his attorney was not present at the October hearing, Lavache would be placed on the Group III list in accordance with the May 16, 1988 Adjustment Board decision. This Court would then need to resolve the NMDU's appeal of the Administrator's July letter.

ever attempted to withdraw its appearance as counsel in this matter in accordance with Rule 3(c) of the Local Rules of this Court or that Adler and Barbero had filed a formal notice of appearance on Lavache's behalf. Furthermore, Lavache does not claim that the LDF or any other party to the proceedings was notified, either by Lavache or by Adler and Barbero, that Lavache had retained private counsel prior to the September meeting and no longer intended to be represented by the LDF. Instead, Lavache appeared at the settlement conference without a lawyer from the Adler and Barbero firm and there is no evidence that he informed the other parties at any point during the September hearing that he no longer intended to be represented by the LDF.

If Lavache had intended private counsel to represent him at either the September or October hearing, he could have brought these meetings to the firm's attention and requested that a lawyer from the firm attend. No evidence is presented that he did so. Rather, as Lavache himself testified, he was aware that he was represented by the LDF attorney at the settlement conference.

The Administrator did not abuse his discretion in finding that Lavache was represented by the LDF throughout the settlement and that Lavache was bound by the consent he communicated to his attorney. Accordingly, the Court upholds the Administrator's determination.

*Priority Number*

Lavache complains that three minority wild cards, Conrad Ephram, Robert Vann, and Gilbert Rodriguez, Jr., were given lower priority numbers than Lavache and therefore have priority in shaping. Paragraphs 1 and 2 of the Agreement, which enjoin all defendants from discriminating against any individual or class of individuals on the basis of race, color or national origins simply have no bearing on the instant issue. The News argues correctly

that Lavache cannot prove that the assignment of priority numbers to the three minority wild cards lower than that assigned to Lavache raises an inference of racial discrimination.[4]

Vann was moved to the Group I list in accordance with the September settlement. Ephram and Rodriguez were added to the Group I list as a result of the Adjustment Board decision dated May 16, 1988 which implemented the relief mandated by the Administrator and the Court in Claims 216 and 223. The Adjustment Board, in moving Ephram and Rodriguez to Group I in accordance with the ruling on Claim 223, treated Ephram and Rodriguez as if they had been on the Group III list since October 1986, in accordance with the ruling on Claim 216. The Adjustment Board also elevated Lavache from Group IV to Group III pursuant to Claim 216.

Lavache asserts that his priority number should have been lowered when he was placed on the Group I list pursuant to the settlement. To the extent that the priority number assigned to Lavache resulted from the settlement agreement, Lavache cannot contest it in this forum as he is bound to the terms of the settlement. Lavache is free however to raise the issue of his priority number with the executive committee of the NMDU.

## CONCLUSION

For the above-stated reasons, the Administrator's determination dated November 22, 1988 is affirmed in its entirety. SO ORDERED.

---

**4.** In his determination, the Administrator stated, in apparent contrast with his earlier letter, that "it is also clear that Lavache's failure to be among the original 13 minority employees was a logical and consistent result in light of the Adjustment Board and the previous decisions. He was not treated unfairly. Neither he nor anyone else could have foreseen Claim No. 223 and its impact on Claim No. 216." Administrator's Determination at 4.